### JAMES *v.* PARK, receiver.

Where a plaintiff files a petition against a defendant, praying for the appointment of a receiver and for the impressment of a trust upon specific property in the possession of the defendant, and the court on interlocutory hearing fails to appoint a receiver, but enjoins the defendant from disposing of the specific property except by the approval of the court, it is erroneous for the court by subsequent interlocutory judgment to peremptorily order the defendant to deliver to the plaintiff the property in question, in advance of an adjudication of the issue as to the ownership of the property by the contending parties, and to enforce such order by imprisonment of the defendant until compliance therewith.

JUNE 14, 1916.

Rule for contempt. Before Judge Worrill. Early superior court. April 14, 1916.

Walter G. Park, as receiver of the Bank of Blakely, brought an equitable petition against D. W. James, alleging, among other things, as follows: James was engaged in a large number of mercan-

tile, farming, and other businesses, and was president of the Bank of Blakely, which had financed many of his enterprises. The bank is now insolvent, and James is indebted to it in the sum of approximately $79,000. A note for $33,333.33, given by the Wakulla Lumber Company to the Gulf Lumber & Railway Company, and transferred by the payee to the bank, was taken from the bank by James, as its president, in trust for the purpose of collecting it before the suspension of the bank; but he has not accounted for it. Petitioner, as receiver of the bank, on investigation has discovered the following facts relating to the execution of that note, its transfer to the bank, and its disposition by James: The defendant James and others organized a corporation under the name of the Gulf Lumber and Railway Company for the purpose of conducting sawmill operations in the State of Florida. James became its president. This corporation sold all of its assets to the Wakulla Lumber Company for $130,000, of which sum $30,000 was paid in cash. Four notes for the balance of the purchase-money were given, one of which is for $33,333.33, and is the note transferred to the bank. The payment of these notes was secured by mortgage. James, as president of the mortgagee, the Gulf Lumber and Railway Company, caused the mortgage to be foreclosed; and a final decree was rendered adjudicating that the mortgagor was still indebted to the Gulf Lumber and Railway Company in the sum of $80,000 principal, besides interest and costs. The property was brought to sale under the decree of foreclosure, and James bid it in for himself as an individual for the nominal sum of $8,020. Inasmuch as the Wakulla Lumber Company note belonged to the Bank of Blakely and was taken by James for the purpose of collecting, he was under a moral and legal duty, as president of the bank, to look after and protect its interest. By reason of these facts the bank's receiver contends that James became the trustee of the bank in buying in the property. Further, James, in fraud of the rights of the bank, negotiated a sale of the property to the Helen Lumber Company for $50,000; the purchase-price being represented in part by 33 promissory notes, 32 for $1,250 each, and one for $167. These notes are in equity the property of the Bank of Blakely, and are held by James in trust for it; because they came into his hands by reason of his being its president and confidential agent in the collection of the Wakulla Lumber Com-

pany note for $33,333.33, and he was charged with the duty of accounting for the same, as well as for all profits derived by him in connection with his trust. He is insolvent. The prayers, inter alia, were for the appointment of a receiver, for injunction against the disposition of the Helen Lumber Company notes, and for an accounting for the Wakulla Lumber Company note.

In his answer James denied that his indebtedness to the Bank of Blakely would exceed $10,000, and denied his insolvency. He averred that the Wakulla Lumber Company note had been judicially determined, in a case between the bank's receiver and the Blakely Oil and Fertilizer Company, not to belong to the bank; but that he believed the note to be the property of the bank, and that he was undertaking to collect the note, but so far he had failed. The various allegations respecting the execution of the Wakulla Lumber Company note, its transfer to the bank, the foreclosure of the mortgage, the purchase of the property by him, and the subsequent sale of it to the Helen Lumber Company were admitted; except he alleged that the purchase-notes given by the Helen Lumber Company were not $50,000, but were $40,167, and that this was after large additions had been made thereto by him. He admitted buying the property at the foreclosure sale, but denied that he bought it for the bank, or became its trustee in the purchase.

At the interlocutory hearing the court enjoined the defendant from disposing of the Wakulla Lumber Company note, and decreed: "That the restraining order heretofore granted by the court, enjoining the said James from selling or otherwise disposing of the Helen Lumber Company notes and mortgage and other personal property, be and the same is hereby revoked. It is further ordered that the said James be and he is hereby authorized to negotiate a sale of said notes and mortgage, subject to the approval and confirmation of this court, upon the most favorable terms practicable; he to report to this court upon what terms and conditions he may be able to dispose of said notes and mortgage, for cash. That upon the said James making to this court a report respecting his ability to sell said notes and mortgage upon terms which this court may approve, then the said James shall be authorized by this court to effectuate the sale of said notes and mortgage, upon his giving bond, payable to the clerk of Early superior court, and to be ap-

proved by him, in the penal sum of $30,000.00, conditioned upon his paying over to the said W. G. Park, as receiver of this court, the proceeds of the sale of said notes and mortgage; said notes and mortgage being claimed by the plaintiff to be trust property belonging to the Bank of Blakely." The order was silent as to any adjudication of James's insolvency or the appointment of a receiver as prayed. Thereafter, on the application of Park, as receiver of the Bank of Blakely, a rule was issued against James, requiring him to show cause why he should not forthwith surrender into the custody of the plaintiff the Helen Lumber Company notes and mortgage, and why the previous order should not be modified or revoked, in so far as it provided that the defendant be authorized to negotiate a sale of the notes and mortgage, subject to the approval of the court. In resistance of this rule James urged a demurrer, that the rule was not based on a final judgment; that he was entitled to a jury trial on all questions involved; that the matters referred to in the rule had not been finally adjudicated; that the court had no authority to order his property turned over to the plaintiff without adjudicating him insolvent and appointing a receiver for his property; and that a rule nisi was not the proper remedy to get possession of property, when the right to the possession of the property had never been adjudicated to be in the plaintiff. This demurrer was overruled, and error was assigned. After hearing evidence the court passed an order revoking leave granted in the previous order for the defendant to sell the Helen Lumber Company notes and mortgage under approval of the court, and directing that the defendant surrender to the plaintiff all of the Helen Lumber Company notes of the aggregate value of $40,167, with the exception of four notes of $1,250 each, which had been disposed of, and also the mortgage to secure the notes; and that he pay to the plaintiff the proceeds of the four notes collected; and further directing that until compliance with this order the defendant be remanded to jail. Exception was taken to this order. Thereafter the defendant delivered to the plaintiff 22 of the Helen Lumber Company notes, aggregating, with accrued interest, $27,-870.57, and filed a petition to be purged of contempt for a failure to deliver the other notes. The court passed an order adjudging that the petition did not present sufficient cause for purging the defendant of the contempt, and continued in force the original order declaring the defendant to be in contempt of court.

*Billie B. Bush* and *Smith, Hammond & Smith,* for plaintiff in error. *Glessner & Collins,* contra.

EVANS, P. J. (After stating the foregoing facts.) The receiver of the Bank of Blakely proceeded against James for a receivership, injunction, and certain other equitable relief. One of the claims of the plaintiff was, that, as to the Helen Lumber Company notes, James was a trustee by reason of the facts alleged. James averred in his answer that these notes were not impressed with a trust, and that they belonged to him. The court did not undertake to place James's property in the hands of an officer appointed by it, but restrained him from disposing of the notes except on prescribed conditions. Afterwards the court revoked so much of the injunction as applied to the Helen Lumber Company notes, and ordered James to "surrender instanter into the possession of the plaintiff" such of the notes as were in his possession, and to "pay instanter into the hands of the plaintiff" the proceeds of such as the court found he had collected. As we construe the original order, the notes were never placed in custodia legis, but only a conditional injunction was granted against the disposition of them by James. The subsequent order revoked so much of the restraining order as granted leave to James to negotiate a sale of the notes subject to the approval of the court, and peremptorily ordered James to turn them over to the plaintiff, who was claiming an adverse title, before that title, which had been attacked in the pleadings, had been finally adjudicated. We think the pleadings made an issue of fact as to the bank's equitable ownership of the Helen Lumber Company notes. James joined issue with the bank as to its title to the Helen Lumber Company notes; and under our system of practice the court was without power at an interlocutory hearing to summarily pass the possession of these notes to the plaintiff, in advance of a trial on the issue of title. *Luxury Fruit Co.* v. *Harris,* 142 *Ga.* 607. Our code provides that at any time in the progress of an equitable cause, if any portion of the same is ready for decree, the court may pass such interlocutory decree as will expedite the final hearing; but if any questions of fact are involved the judge should not finally decree thereon without first submitting them to a jury. Civil Code (1910), §§ 5420, 5422. It will be observed that the defendant is not punished for the violation of the injunction.

*Judgment reversed. All the Justices concur.*